## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**SEGWAYNE KIRK ANTHONY**
**GOLDSON,**

      **Petitioner,**

**v.**                                   **Case No. 5:23cv225-TKW/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,**

      **Respondent.**
_____/

## <u>REPORT AND RECOMMENDATION</u>

On August 22, 2023, Petitioner Segwayne Kirk Anthony Goldson, a
state inmate represented by counsel, filed a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254 and a supporting memorandum.  ECF No. 1.
He challenges his conviction entered June 30, 2016, and sentence imposed
November 10, 2016, by the Fourteenth Judicial Circuit, Bay County, following
a jury trial in case number 2016-CF-2683.  *Id*. at 1-2.

On January 22, 2024, Respondent filed an answer, ECF No. 8, with
exhibits, ECF No. 9.  Petitioner Goldson filed a reply on February 11, 2024.
ECF No. 10.

At that point, this case was placed in line for review.  On review, as
part of the Court's initial examination, the petition is checked for timeliness

under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).
*See* Day v. McDonough, 547 U.S. 198, 209 (2006) (holding that "district
courts are permitted, but not obliged, to consider *sua sponte*, the timeliness
of a state prisoner's habeas petition"); Jackson v. Sec'y for Dep't of Corr.,
292 F.3d 1347, 1349 (11th Cir. 2002) (holding that district court has
discretion to raise § 2254 timeliness issue *sua sponte*).  *See also, e.g.*, Sweet
v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1319-20 (11th Cir. 2006) (affirming
dismissal of § 2254 petition as untimely and, among other things, rejecting
petitioner's argument that State did not preserve timeliness argument
because State did not raise issue in first responsive pleading).

In this case, Goldson's counsel explained the "timeliness of petition":

> Petitioner's direct appeal was per curiam
> affirmed on 2-20-18.  154-days elapsed until
> Petitioner filed a petition for writ of habeas corpus
> alleging ineffective assistance of appellate counsel
> on 7-24-18.  After the denial of rehearing with
> opinion, Petitioner sought discretionary review in the
> Florida Supreme Court.  Meanwhile, Petitioner filed
> a motion for postconviction relief on 3-19-20.  The
> Florida Supreme Court denied discretionary review
> on 8-4-20.  Petitioner's motion for postconviction
> relief was denied, appealed, and the mandate issued
> 10-31-22.
>
> Petitioner appealed followed the judgment and
> sentence of the lower court; therefore, Petitioner had
> 90-days in which to seek certiorari in the Supreme
> Court of the United States before the 1-year Anti-
> Terrorism and Effective Death Penalty ("AEDPA")

> began.  **Petitioner's "federal clock" under AEDPA ran from 2-20-18 through 7-24-18, and was tolled from 7-24-18 through 10-31-22.  Accordingly, the instant petition is timely if filed on or before 8-28-23.**

ECF No. 1 at 13-14 (bold emphasis added).  Using the dates in this explanation, the petition is untimely as 154 days ran from February 20, 2018, until July 24, 2018, and then the remaining 211 days (365 - 154 = 211) ran from November 1, 2022, through May 30, 2023, when the one-year AEDPA period would have expired according to the dates provided by Petitioner.

Respondent addressed timeliness in its answer and explained:

> Petitioner's judgment became final for purposes of federal habeas corpus proceedings on **May 21, 2018**, i.e., 90 days after the 1st DCA affirmed his judgment and sentence on direct appeal in Goldson v. State, 241 So. 3d 918 (Fla. 1st DCA 2018).  (Ex. B12).  *See* Nix v. Sec'y for Dept. of Corr., 393 F.3d 1235, 1236 (11th Cir. 2004) ("Section 2244(d)(1)(A) provides that the one-year limitations period in which a state prisoner has to file a writ for habeas corpus begins to run from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'").  *See also* Michel v. United States, 519 F.3d 1267, 1268 (11th Cir. 2008) ("A petition for writ of certiorari must be filed within 90 days of the day the appellate court's judgment was entered.").

> Thus, barring any tolling events, Mr. Goldson had until May 21, 2019, to file his federal Petition for Writ of Habeas Corpus. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (explaining that § 2244(d)(1)'s "limitations period should be calculated according to the 'anniversary method' under which the limitations period expires on the anniversary date it began to run.").

When Petitioner's judgment became final on May 21, 2018, his one-year AEDPA limitations period commenced running and continued to do so until July 24, 2018 (i.e., for 64 days), when he filed his Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel in the 1st DCA. (Ex. C1). Mr. Goldson's limitations period then remained tolled until October 31, 2022, when the 1st DCA issued its mandate following its affirmance of the postconviction order in Goldson v. State, 348 So. 3d 494 (Fla. 1st DCA 2022). (Ex. E6).

Thereafter, Petitioner's one-year limitations period re-commenced running and continued to do so for another 295 days, when his Petition for Writ of Habeas Corpus was filed in the instant case on August 22, 2023. (Ex. F1). Therefore, because only 359 un-tolled days elapsed from the date Petitioner's judgment became final until his federal habeas petition was filed, **it appears that the petition is timely. However, should this Court disagree, Respondent respectfully reserves the right to challenge the timeliness of the petition**.

ECF No. 8 at 4-5 (bold emphasis added).

Thus, based on the information provided by Petitioner and Respondent, a dispute existed regarding the start date for calculating the one-year AEDPA limitations period. The parties agreed that Goldson appealed his judgment and sentence to the First District Court of Appeal (First DCA). In that appeal, First DCA case number 1D16-5299, Goldson's counsel filed an initial brief in pursuant to Anders v. California, 386 U.S. 738 (1967), asserting no issue of arguable merit existed. Ex. B6.[1] By order on

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits, ECF No. 9, submitted with Respondent's answer, ECF No. 8.

August 10, 2017, the First DCA directed Goldson's counsel to file a supplemental brief addressing three issues involving the trial court's denial of a motion to suppress as well as motions in limine seeking admission of hearsay and Williams[2] rule evidence because, contrary to counsel's assertion, the trial court appeared to have rendered a definitive ruling thereon, obviating the need for renewed objections to preserve any claims of error for appeal. Ex. B8. Counsel filed the supplemental brief asserting reversible errors had occurred, Ex. B9; Goldson filed a pro se brief, Ex. B10. The State filed an answer brief. Ex. B11. In a written opinion issued February 20, 2018, a panel of the First DCA, consisting of Judges Bilbrey, Winsor, and M.K. Thomas, affirmed the case. Goldson v. State, 241 So. 3d 918 (Fla. 1st DCA 2018); Ex. B12. Goldson did not seek further review.

Given the foregoing, it appeared Goldson's conviction and sentence became final for federal habeas purposes on either **March 22, 2018**, upon expiration of the thirty-day period for seeking review in the Florida Supreme Court, or **May 21, 2018**, upon expiration of the ninety-day period for seeking review in the U.S. Supreme Court, affecting the timeliness of his § 2254 petition. *See* 28 U.S.C. § 2244(d)(1)(A); Gonzalez v. Thaler, 565 U.S. 134, 137 (2012) (holding that "for a state prisoner who does not seek review in a

---

[2] Williams v. State, 621 So. 2d 413 (Fla. 1993).

State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires"); <u>Jackson</u>, 292 F.3d at 1349 ("According to the Supreme Court Rules, a petitioner must file for a writ of certiorari to the Supreme Court of the United States within 90 days after entry of judgment in the state court of last resort.  Sup. Ct. R. 13.").  *See also, e.g.*, Fla. Const. art. V, § 3(b)(3) (providing that Florida Supreme Court "[m]ay review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law"); Fla. R. App. P. 9.120(b) ("The jurisdiction of the supreme court shall be invoked by filing a notice . . . within 30 days of rendition of the order to be reviewed."); *see, e.g.*, <u>The Fla. Star v. B.J.F.</u>, 530 So. 2d 286, 288 (Fla. 1988) (explaining that Florida Supreme Court "in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself"); <u>Jones v. Fla. Dep't of Corr.</u>, No. 21-10331-E, 2021 WL 3824675, at *1 (11th Cir. Apr. 20, 2021) (citing <u>Gonzalez</u> and Rule 9.120(b) and explaining, "Because Jones did not appeal his convictions to

the Florida Supreme Court, the convictions became final when the time to seek appellate review expired on August 18, 2017, which was 30 days after the Fourth District Court of Appeal affirmed his convictions and sentence on July 19, 2017."); Palmer v. Inch, No. 5:19cv002-MCR/HTC, 2021 WL 4526709, at *3 (N.D. Fla. July 1, 2021) (Report and Recommendation to dismiss § 2254 as untimely, explaining, "For purposes of the AEDPA, Petitioner's conviction became final on January 4, 2016, the expiration of the 30-day deadline for Petitioner to seek discretionary review with the Florida Supreme Court of the First DCA's written affirmance of the state court judgment and sentence."), *adopted by order of district judge*, 2021 WL 4523079 (N.D. Fla. Oct. 4, 2021); Dailey v. Crews, No. 3:13cv148-WS/EMT, 2014 WL 2158428, at *4 (N.D. Fla. May 23, 2014) (Order adopting Report and Recommendation to dismiss § 2254 as untimely, in which magistrate judge had explained that conviction became final "upon expiration of the 30-day period for seeking review in the Florida Supreme Court" as "[t]he First DCA's affirmance [of direct appeal] was not unelaborated" and "Florida Supreme Court could have considered whether the decision 'expressly and directly conflict[ed] with a decision of another district court of appeal or of the supreme court on the same question of law,' thus invoking the court's discretionary jurisdiction"); Coulliette v. Sec'y, Dep't of Corr., No. 5:12cv355-

MW/GRJ, 2014 WL 518936, at *2 (N.D. Fla. Feb. 10, 2014) (Order adopting Report and Recommendation to dismiss § 2254 petition as untimely, in which magistrate judge had explained, "Because the First DCA had issued a written opinion, Petitioner could have sought discretionary review in the Florida Supreme Court, but he did not do so.  Accordingly, Petitioner's conviction became final on April 2, 2007, 30 days after the First DCA denied his motion for rehearing, when the time to seek discretionary review expired.").

Because of the discrepancy between the petition and the answer regarding the start date for calculating Goldson's one-year AEDPA limitations period, the undersigned ordered a supplemental response, with time for Petitioner to file a supplemental reply, if any.  ECF No. 11.  *See, e.g.*, Day, 547 U.S. at 210-11; Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649, 654-55 (11th Cir. 2020).  Respondent filed a supplemental response on May 19, 2025.  ECF No. 12.  On June 18, 2025, counsel for Petitioner filed a supplemental reply.  ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the

disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The pleadings and attachments before the Court show the petition should be dismissed as untimely.  *See* Rule 4, R. Gov. § 2254 Cases (authorizing dismissal "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" in federal court).

### Procedural Background

By a fourth amended information filed October 10, 2016, in Bay County Circuit Court Case 2016-CF-2683, the State of Florida charged Petitioner Segwayne Kirk Anthony Goldson with three counts of sexual battery with physical force likely to cause serious personal injury on a person 12 years of age or older, a life felony in violation of section 794.011(3) and 775.087(1), Florida Statutes (2016).  Ex. B1 at 105; *see id*. at 9 (initial information), 12 (amended information), 41-42 (second amended information), 51-52 (third amended information).  The charges arose from events that occurred on or between June 30, 2016, and July 1, 2016, involving the victim T.R.  *See* Ex. B1 at 105; ECF No. 1-2 at 4-5.

Goldson proceeded to a jury trial, with jury selection on October 10, 2016, Ex. B1 at 102-04, Ex. B3; and the trial on October 11, 2016, Ex. B1 at 107-10, Ex. B5, during which Goldson testified, Ex. B5 at 215-54.  The jury returned a verdict finding him not guilty on the first count; guilty as charged

on the second count, with a specific finding that Goldson "did cause serious personal injury to the victim"; and guilty of the lesser included offense of sexual battery on the third count, with a specific finding that Goldson "did not cause serious personal injury to the victim."  Ex. B1 at 135-37; Ex. B5 at 288-90.  On November 10, 2016, the trial court adjudicated him guilty and sentenced him to fifty (50) years in prison, minimum mandatory, on the second count and fifteen (15) years in prison on the third count, to run consecutively.  Ex. B1 at 158-64; Ex. B4 at 302-28.  The court also designated Goldson as a sex offender.  Ex. B1 at 164.

As indicated above, Goldson appealed to the First District Court of Appeal (First DCA), and his counsel filed an <u>Anders</u> brief.  Ex. B6.  Counsel subsequently filed the supplemental brief as directed by the First DCA, Ex. B9, and Goldson filed a pro se brief, Ex. B10.  The State filed an answer brief.  Ex. B11.  In a written opinion issued February 20, 2018, the First DCA affirmed the case with the following explanation:

> Appellant Segwayne Goldson appeals his judgment of conviction and sentence for sexual battery with physical force likely to cause serious injury and sexual battery.  His appointed appellate counsel filed an <u>Anders</u> brief.  Thereafter, counsel was ordered to file a supplemental brief addressing three issues identified by this court as potentially meritorious.  Consideration of the arguments raised on appeal as well as our independent review of the record and applicable law has revealed no reversible error in the circuit court's proceedings.  Accordingly, the judgment of conviction and sentences are AFFIRMED.

Goldson v. State, 241 So. 3d 918 (Fla. 1st DCA 2018) (footnote omitted, which cited Anders as well as In re: Order of First DCA Regarding Brief filed in Forester v. State, 556 So. 2d 1114 (Fla. 1990)); Ex. B12.

On July 24, 2018, through counsel, Goldson filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel, assigned case number 1D18-3080. Ex. C1; *see* Ex. C2 (appendix). The State filed a response. Ex. C3; *see* Ex. C4 (appendix). Goldson filed a reply to the State's response. Ex. C5. On October 31, 2019, the First DCA per curiam denied the petition without a written opinion. *See* https://acis.flcourts.gov/portal/court. Goldson filed a motion for rehearing, certification, and/or issuance of a written opinion. *See id*. On March 24, 2020, the First DCA withdrew the previous disposition, denied rehearing, and issued a written opinion explaining its decision to deny the petition. Goldson v. State, 293 So. 3d 569 (Fla. 1st DCA 2020); Ex. C6. Goldson filed a notice to invoke discretionary jurisdiction in the Florida Supreme Court, Ex. C7, assigned case number SC20-592; on August 4, 2020, that court declined to accept jurisdiction, Ex. D2.

In the meantime, on March 19, 2020, Goldson, through counsel, filed a motion to vacate or set aside his judgment and sentence pursuant to Rule 3.850 in the state trial court, alleging three claims of ineffective assistance of

trial counsel. Ex. E7. By order on December 9, 2020, the court struck the motion as facially insufficient, with leave to amend within sixty (60) days. Ex. E8. Goldson filed an amended petition on January 26, 2021, which included a fourth claim of ineffective assistance of trial counsel. Ex. E1 at 11-44. By order rendered February 2, 2022, the post-conviction trial court summarily denied relief on all four claims. Ex. E1 at 84-118 (exclusive of attachments).

Through counsel, Goldson appealed to the First DCA and filed an initial brief in assigned case number 1D22-0662. Ex. E2. The State filed an answer brief. Ex. E3. Goldson filed a reply. Ex. E4. On October 13, 2022, the First DCA affirmed the case without a written opinion. Ex. E5; Goldson v. State, 348 So. 3d 494 (Fla. 1st DCA 2022) (table). The mandate issued October 31, 2022. Ex. K.

On August 22, 2023, Goldson, through counsel, filed the § 2254 petition and supporting memorandum. ECF No. 1. The petition presents two grounds alleging ineffective assistance of counsel (IAC):

    (1) **IAC – Appellate Counsel**. *Id*. at 6, 16-18.

    (2) **IAC – Trial Counsel**. *Id*. at 7, 18-23.

On January 22, 2024, Respondent filed an answer, ECF No. 8, with exhibits, ECF No. 9. Goldson filed a reply on February 11, 2024. ECF No. 10.

Thereafter, as explained above, this Court ordered the supplemental response on timeliness, ECF No. 11, which Respondent filed on May 19, 2025, ECF No. 12. Petitioner filed a reply thereto on June 18, 2025. ECF No. 13.

## **Timeliness**

Under the AEDPA, there is a one-year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Later dates which may commence the period are the date on which an unconstitutional impediment that prevented the applicant from filing is removed; the date on which the constitutional right asserted was recognized by the U.S. Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered with due diligence. *Id.* § 2244(d)(1)(B)-(D). The limitations period is tolled for the time during which a "properly filed" application for relief is pending in state court. *Id.* § 2244(d)(2). The time may be equitably tolled, but "only if a petitioner establishes *both* extraordinary circumstances and due diligence." Diaz v. Sec'y for Dep't of Corr., 362 F.3d 698, 702 (11th Cir. 2004).

In the order directing supplemental filings on timeliness, as set forth above, this Court cited authority for the proposition that it "appears Goldson's conviction and sentence became final for federal habeas purposes on March 22, 2018, upon expiration of the thirty-day period for seeking review in the Florida Supreme Court."  ECF No. 11 at 6.  Rather than explaining or analyzing this issue, in its supplemental filing, Respondent merely cited Gonzalez, 565 U.S. at 137 – which Petitioner's counsel correctly points out is a decision originating in Texas, not Florida – and concluded that Petitioner had to petition the Florida Supreme Court for review of the First DCA's decision in the direct appeal and did not do so; therefore, his conviction and sentence became final on March 22, 2018.  Accordingly, Respondent asserts in the supplemental filing that the § 2254 petition is untimely and should be dismissed.  ECF No. 12 at 2-3.

In the supplemental reply, Petitioner's counsel addresses the issue and asserts "Goldson could not have sought discretionary review from the February 20, 2018, single-paragraph written opinion because no basis in law or fact existed to seek discretionary review."  ECF No. 13 at 2.  Counsel explains that "[d]iscretionary review cannot be sought [in the Florida Supreme Court] from unelaborated affirmances and 'PCA' opinions [issued by a district court of appeal]."  *Id*. at 4 (citing Wells v. State, 132 So. 3d 1110,

1112-13 (Fla. 2014)).  Counsel asserts that "Goldson's direct appeal was final on February 20, 2018, because he was legally precluded from seeking discretionary review based on the absence of an express and direct conflict with another court on the same point of law" and "[h]is 90-day certiorari period thus commenced."  ECF No. 13 at 8.  Counsel then states, "This Court should consider Goldson's petition for writ of habeas corpus timely filed an allow the case to proceed."  *Id*.

The U.S. Supreme Court has held that where a state criminal defendant seeks certiorari review there following review in the state's highest court, the judgment becomes final when the U.S. Supreme Court affirms the conviction or denies review.  Gonzalez, 565 U.S. at 150.  If the state criminal defendant does not seek review in the state's highest court of last resort, however, the judgment becomes final when the time for seeking such review expires.  *Id*.  "Determining what constitutes a 'state court of last resort' or the 'highest court of a State in which a decision could be had' for purposes of the Supreme Court's certiorari jurisdiction requires an examination of state court procedures."  Dailey v. Crews, No. 3:13cv148-WS/EMT, 2014 WL 2158428, at *3 (N.D. Fla. May 23, 2014) (district court Order adopting Report and Recommendation); *see* Costarelli v. Massachusetts, 421 U.S. 193, 195-97 (1975); Pugh v. Smith, 465 F.3d 1295, 1299-1300 (11th Cir. 2006).

Article V, section 3(b), of the Florida Constitution governs the jurisdiction of the Florida Supreme Court.  *See* Wells v. State, 132 So. 3d 1110, 1112 (Fla. 2014).  That provision provides:

(b) Jurisdiction.—The supreme court:

(3) May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

Fla. Const. art. V, § 3(b)(3).   In Wells, the Florida Supreme Court summarized decisions addressing its jurisdiction under this constitutional provision:

[B]ased on our case law since Jenkins [v. State, 385 So.2d 1356 (Fla.1980)], it is clear that we have explicitly held that this Court lacks discretionary review jurisdiction over the following four types of cases: (1) a per curiam affirmance rendered without written opinion – *see* Jenkins, 385 So. 2d at 1359; (2) a per curiam affirmance with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute – *see* Dodi Publishing [Co. v. Editorial America, S.A.], 385 So. 2d [1369,] 1369 [(Fla.1980)], and Jollie [v. State], 405 So. 2d [418,] 421 [(Fla.1981)]; (3) a per curiam or other unelaborated denial of relief rendered without written opinion – *see* Stallworth [v. Moore], 827 So.2d [974,] 978 [(Fla. 2002)]; and (4) a per curiam or other unelaborated denial of relief with a citation to (i) a case not pending review or a case that has not been quashed or reversed by this Court, (ii) a rule of procedure, or (iii) a statute – *see* Gandy [v. State], 846 So.2d [1141,] 1144 [(Fla. 2003)].

132 So. 3d at 1113.  *See also, e.g.*, <u>Persaud v. State</u>, 838 So. 2d 529, 532 (Fla. 2003) ("[T]his Court has historically applied the reasoning of <u>Dodi Publishing</u> to other district court citation per curiam decisions, like those in Persaud's and Baker's cases, which merely cite to a statute, a rule, or a decision of the United States Supreme Court or this Court.").   In another case, <u>The Florida Star v. B.J.F.</u>, the Florida Supreme Court answered a certified question from the U.S. Supreme Court:

> This Court in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself.  That is, the opinion must contain a statement or citation effectively establishing a point of law upon which the decision rests.

530 So. 2d 286, 288 (Fla. 1988) (footnoted omitted).   In a footnote, the Florida Supreme Court explained, "This Court does not, however, have subject-matter jurisdiction over a district court opinion that fails to expressly address a question of law, such as opinions issued without opinion or citation."  *Id*. n.3.

In Goldson's case, the First DCA affirmed the direct appeal with the following opinion:

> Appellant Segwayne Goldson appeals his judgment of conviction and sentence for sexual battery with physical force likely to cause serious injury and sexual battery.  His appointed appellate counsel filed an <u>Anders</u> brief.  Thereafter, counsel was ordered to file a supplemental brief addressing three issues

identified by this court as potentially meritorious. Consideration of the arguments raised on appeal as well as our independent review of the record and applicable law has revealed no reversible error in the circuit court's proceedings. Accordingly, the judgment of conviction and sentences are AFFIRMED.

Goldson v. State, 241 So. 3d 918 (Fla. 1st DCA 2018) (footnote omitted, which cited Anders and In re: Order of First DCA Regarding Brief filed in Forester v. State, 556 So. 2d 1114 (Fla. 1990)); Ex. B12. This affirmance thus appears unelaborated and not reviewable by the Florida Supreme Court. *See* Gee v. Sec'y, Fla. Dep't of Corr., No. 3:21cv327-MMH/LLL, 2023 WL 7166656, at *2-*3 (M.D. Fla. Oct. 31, 2023) ("Here, the Florida Supreme Court did not have subject-matter jurisdiction over Gee's appeal. The First DCA opinion constituted a 'mere citation' [to Williams v. State, 39 Fla. L. Weekly D1336 (Fla. 1st DCA June 25, 2014),] per curiam affirmance and failed to expressly address a question of law. It did not cite a case 'pending review' because the Florida Supreme court never granted the petition for discretionary review in Williams. Further, in the absence of subject-matter jurisdiction, the Florida Supreme Court's assignment of a case number to Gee's petition and the *sua sponte* stay had no effect on the finality of Gee's direct appeal. Because the Florida Supreme Court did not have jurisdiction over Gee's notice, his judgment and sentence became final when the ninety-day period in which to file a petition for certiorari in the United States

Supreme Court expired." (citations omitted)).  *Cf.* Pereira v. Sec'y, Dep't of Corr., No. 23-13230, 2025 WL 262382, at *2 (11th Cir. Jan. 22, 2025) ("[T]he district court did not abuse its discretion in denying Pereira's Rule 60(b) motion because the court correctly determined that his § 2254 petition was untimely.  The Fifth DCA's [one paragraph] opinion expressly resolved a question of law within its four corners by discussing facts from Pereira's case about the trial court's failure to enter a written competency order and resolving a procedural issue this raised by remanding for the entry of a *nunc pro tunc* written order declaring Pereira competent to proceed.  This means the Florida Supreme Court had discretionary jurisdiction to review the Fifth DCA's decision, and Pereira's one-year deadline to file his § 2254 petition began running upon the expiration of the 30 days Pereira had to seek review of the Fifth DCA's decision before the Florida Supreme Court.").

Nothing in the four corners of the First DCA's Goldson opinion satisfies the guidelines in The Florida Star case for Florida Supreme Court subject-matter jurisdiction.  The Goldson opinion does not reference or discuss any particular facts in the case, nor does it set out or explain the "potentially meritorious" issues identified by that court in its order directing counsel to file a supplemental brief.  The only cases it cites, in a footnote, are Anders and Forrester, which concerned briefing requirements in Anders cases.

Therefore, it does not appear Goldson could have sought Florida Supreme Court review of this unelaborated opinion. *Cf., e.g.*, Bravo v. Sec'y, Dep't of Corr., No. 1:22cv69-AW/MJF, 2022 WL 17668456, at *1 (N.D. Fla. Dec. 14 2022) (district court order adopting Report and Recommendation and explaining: "Bravo could have sought Florida Supreme Court review of the DCA's decision because that decision was neither an affirmance without opinion nor an unelaborated opinion. The opinion was not particularly long, but it set out the facts, and it addressed issues of law. It did enough to give the Florida Supreme Court jurisdiction to review.").

Given this conclusion, Goldson's § 2254 petition is not untimely. A Florida prisoner's conviction becomes "final 90 days after the Florida district court of appeal affirm[s] his conviction" where a "prisoner could have sought review in the Supreme Court of the United States without first seeking review in the Supreme Court of Florida." Pugh, 465 F. 3d at 1299-1300 (citation omitted). Accordingly, Goldson's conviction became final for AEDPA purposes on **May 21, 2018**, when the period for seeking certiorari review with the U.S. Supreme Court expired following the First DCA's decision affirming his judgment and sentence. *See* Sup. Ct. R. 13; Gonzalez, 565 U.S. at 150 ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review' – when this Court

affirms a conviction on the merits or denies a petition for certiorari.  For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review' – when the time for pursuing direct review in this Court, or in state court, expires."); Kaufman v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (concluding that conviction does not become "final" for purposes of § 2555(f)(1) until the 90-day period for seeking certiorari review expires, even if the prisoner does not petition for such review).

Goldson had one year thereafter – until May 21, 2019 – to file his federal habeas petition, absent tolling activity. *See, e.g.*, Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1218 (11th Cir. 2017) (explaining Cadet's conviction became final "on December 23, 2002, . . . [and] [o]n that same date, Cadet's one-year statute of limitations for filing a federal habeas petition began to run," citing 28 U.S.C. § 2244(d)(1)(A)); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (calculating limitations period according to "anniversary method"); Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (applying anniversary date analysis).

On July 24, 2018, Goldson filed his petition for writ of habeas corpus in the First DCA, stopping the AEDPA clock at 64 days.  Ex. C1.  Because of overlapping post-conviction filings in state court, Goldson's AEDPA time remained tolled through October 31, 2022, when the First DCA issued the

mandate in the appeal affirming the denial of post-conviction relief.  Ex. E6.

The clock resumed running on November 1, 2022, and ran for an additional

295 days, until Goldson filed this § 2254 petition on August 22, 2023.  ECF

No. 1.  Because only 359 un-tolled days (64 + 295) of the one-year AEDPA

limitations period had passed at this point, Goldson's petition is timely.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, federal courts may grant habeas corpus

relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the

doubt.'"  <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86,

102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting

Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).    "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

## Ground 1:  Appellate IAC – Sentencing Enhancement

In his first ground, Petitioner Goldson asserts the First DCA erred in denying his petition for writ of habeas corpus which had alleged ineffective assistance of appellate counsel.  ECF No. 1 at 5.  In particular, Goldson asserts his appellate counsel provided ineffective assistance by not raising a point on appeal that his 50-year mandatory sentence as a Dangerous Sexual Felony Offender (DSFO)  violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. U.S., 570 U.S. 99 (2013), where the State did not put Goldson on notice of the DSFO enhancement by charging it in the information.  ECF No. 1-2 at 3-6.  Respondent indicates Petitioner exhausted this ground in state court.  ECF No. 8 at 7.

In particular, Petitioner Goldson raised this claim in his petition for writ of habeas corpus filed by counsel in the First DCA, alleging ineffective assistance of appellate counsel for not challenging his sentence as a DSFO imposed pursuant to section 794.0115, Florida Statutes.  Ex. C1.  The First

DCA denied the petition and explained its decision in an opinion issued

March 24, 2020, ultimately concluding that because Goldson had actual

notice that he faced a 50-year mandatory minimum DSFO sentence.

Goldson v. State, 293 So. 3d 569 (Fla. 1st DCA 2020).

Specifically, at the outset, the First DCA set forth the background,

arguments, and statutes involved:

> In 2016, Petitioner was charged with three counts of sexual battery with the use of physical force likely to cause serious injury, violations of section 794.011, Florida Statutes. After trial Petitioner was found guilty as charged (sexual battery with physical force) as to count 2 of the information and guilty of a lesser offense (sexual battery without physical force) as to count 3. [Ex. B1 at 105.] As to count 2, the jury made a specific finding that Petitioner caused serious personal injury to the victim. [Ex. B1 at 135.]
>
> For count 2, Petitioner was sentenced to a 50-year mandatory minimum term as a DSFO. [Ex. B1 at 160.] For count 3, he was sentenced to 15 years. [Ex. B1 at 162.] The sentences were to run consecutively. [Ex. B1 at 163.]
>
> The State did not charge or allege section 794.0115, Florida Statutes, the DSFO statute, in the information. [See Ex. B1 at 105.] Nonetheless, the State argued at sentencing – and the trial court agreed – that, because the State orally advised Petitioner during a plea offer prior to jury selection that if he did not accept the plea he would be subject to a 50-year mandatory minimum as a DSFO [, Ex. B3 at 192-205], this was sufficient notice to impose the DSFO sentence. [Ex. B4 at 323-25.] In the instant petition, Petitioner argues that the DSFO statute or the element of "actually caused serious personal injury to the victim" should have been included in the information.

The sexual battery statute, section 794.011(3), Florida Statutes, provides:

> A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury commits a life felony, punishable as provided in s. 775.082, s. 775.083, s. 775.084, or s. 794.0115.

(emphasis added). The last clause of section 794.011(3) expressly indicates that the offense is punishable under the DSFO statute, section 794.0115. Section 794.0115(2), Florida Statutes, provides:

> Any person who is convicted of a violation of s. 787.025(2)(c); s. 794.011(2), (3), (4), (5), or (8); s. 800.04(4) or (5); s. 825.1025(2) or (3); s. 827.071(2), (3), or (4); or s. 847.0145; or of any similar offense under a former designation, which offense the person committed when he or she was 18 years of age or older, and the person:
>
> (a) **Caused serious personal injury to the victim as a result of the commission of the offense**;
>
>      ....
>
> is a dangerous sexual felony offender, who must be sentenced to a mandatory minimum term of 25 years imprisonment up to, and including, life imprisonment. If the offense described in this subsection was committed on or after October 1, 2014, a person who qualifies as a dangerous sexual felony offender pursuant to this subsection must be sentenced to a mandatory minimum term of 50 years imprisonment up to, and including, life imprisonment.

(emphasis added).

*Id*. at 570.  The court then discussed case law:

> Generally, where a certain factual finding is necessary to implicate a sentence enhancement statute, the State must charge that fact in the information or cite the enhancement statute in order to provide notice to the defendant that he may face the enhancement.  *See, e.g.*, <u>Arnett v. State</u>, 128 So. 3d 87, 88 (Fla. 1st DCA 2013) (imposition of mandatory minimum under § 775.087(2)(a) was illegal because defendant was not charged with "actual possession" of a firearm); <u>Davis v. State</u>, 884 So. 2d 1058, 1060-61 (Fla. 2d DCA 2004) (imposition of mandatory term under section 775.087(2)(a) was illegal because information did not charge death or great bodily harm); <u>Altieri v. State</u>, 835 So. 2d 1181, 1183 (Fla. 4th DCA 2002) (imposition of mandatory minimum under section 775.087(2)(a) was illegal because information did not charge defendant with having discharged a firearm, but only charged him with having "used" a firearm). A special finding by the jury does not cure the defect in the charging document. <u>Arnett v. State</u>, 128 So. 3d at 88; <u>Davis</u>, 884 So. 2d at 1060-61.  In <u>Davis v. State</u>, 277 So. 3d 1111 (Fla. 1st DCA 2019), this court reversed and remanded with instructions to "strike the mandatory minimum term of his life sentence for attempted first-degree premeditated murder *because the allegations in the charging document were not sufficient to place him on notice that he was subject to an enhanced sentence* under section 775.087(2)(a)(3), Florida Statutes (providing for the imposition of a 25-year mandatory minimum when a defendant inflicts death or great bodily harm through the discharge of a firearm)." (Emphasis added).  As authority, the <u>Davis</u> panel relied on <u>Bienaime v. State</u>, 213 So. 3d 927, 929 (Fla. 4th DCA 2017), wherein the Fourth DCA held the State must "allege grounds for enhancement in the charging document" to pursue an enhanced mandatory sentence under the 10-20-Life statute.  *Id*.

*Id*. at 570-71.  The court distinguished some of the referenced cases and

found a Florida Supreme Court case more applicable:

In this case, the element of the underlying offense – sexual battery in violation of section 794.011(3), Florida Statutes – that the defendant "used actual physical force likely to cause serious personal injury" was charged in the information. The 50-year mandatory minimum under the DSFO statute, section 794.0115(2), Florida Statutes, required a finding that the defendant actually "caused serious personal injury to the victim as a result of the commission of the offense." These are different requirements such that the inclusion of the "actual physical force likely" element in the information did not also sufficiently put the defendant on notice of the "caused serious personal injury" requirement for DSFO. *Cf.* Altieri, 835 So. 2d at 1183 (information alleging that defendant "used" a firearm was insufficient to place defendant on notice that he could be subject to mandatory minimum if he was found to have "discharged" a firearm).

This case differs from Altieri, Davis, and the others cited above in that there is no indication in those opinions that the defendants were clearly made aware through pretrial hearings that they faced the sentencing enhancement that was not charged in the information. In this case, it is clear that a plea discussion on the record prior to jury selection included a discussion that Petitioner faced a 50-year mandatory minimum as a DSFO. [Ex. B3 at 192-205, 213-16.] The jury also made the factual finding [on the verdict form] which met the statutory requirements. [Ex. B1 at 135-36.] There is very little analysis in the case law whether the defendant must demonstrate prejudice. In Bradley v. State, 3 So. 3d 1168, 1171 (Fla. 2009), the Florida Supreme Court held that a defendant, in making a nolo contendere plea, could waive a defective information that failed to charge him with discharging a firearm – the fact on which imposition of a mandatory minimum was based. The Florida Supreme Court noted that Bradley's trial counsel clearly stated at the plea hearing that Bradley faced the mandatory minimum. *Id*. The Florida Supreme Court also noted that Bradley's plea agreement and the factual stipulation "reflects that he understood the nature and consequences of his plea, negating any notion that he was misled or prejudiced." *Id*. Altieri and the other similar cases cited above did not involve a prejudice

analysis. While <u>Bradley</u> involved a plea and arguably actual acceptance of the defect, we see no reason not to apply a prejudice analysis in the context of the claim we have before us.

The instant case has clear record support that Petitioner knew prior to trial that he faced a 50-year mandatory minimum sentence as a DSFO. [Ex. B3 at 192-205, 213-16; Ex. B4 at 323-25.] We conclude that the instant case is sufficiently similar to the circumstances involving the plea that satisfied the Florida Supreme Court's analysis in <u>Bradley</u>. Similarly to <u>Bradley</u>, Petitioner's trial counsel (as well as the judge and prosecutor) acknowledged at the hearing that Petitioner was facing a 50-year mandatory minimum sentence as a DSFO. Petitioner's counsel did indicate some inclination to challenge the information prior to the swearing in of the jury, but counsel acknowledged receiving the information and acknowledged the State's plea offer and Petitioner's sentencing exposure. Both the judge and the attorneys explained the sentencing exposure to Petitioner. Because Petitioner had actual notice, the petition alleging ineffective assistance of appellate counsel is denied on the merits.

*Id*. at 571-72.

"An ineffective assistance of appellate counsel claim is governed by the familiar two-part performance-and-prejudice standard set forth in <u>Strickland</u>." <u>Clark v. Crosby</u>, 335 F.3d 1303, 1310 (11th Cir. 2003); *see, e.g.,* <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991). "Counsel's performance will be deemed prejudicial if . . . 'the neglected claim would have a reasonable probability of success on appeal.'" <u>Heath</u>, 941 F.2d at 1132 (quoting <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990))).

In this case, the First DCA's denial on the merits of the habeas petition alleging ineffective assistance of appellate counsel constitutes an adjudication entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99.  A review of the record supports the court's determination, as reflected in the citations to the record in the brackets in the quotes from the First DCA's opinion, *supra*.  Given the record, as well as the court's review of the statutes and case law, it was not unreasonable for the court to conclude that appellate counsel's performance was not deficient because Goldson had actual notice of the DSFO sentencing enhancement and thus the omitted claim would not have succeeded on appeal.

Regardless of this finding of actual notice, Goldson asserts in his memorandum that "[t]he final fourth amended information failed to place [him] on notice of the DSFO enhancement" and "[t]he fact that DSFO enhancement was noted for the first time just prior to the jury being sworn is irrelevant and did not cure the errors under Apprendi and Alleyne."  ECF No. 1-2 at 6-7.  Goldson relies on three cases:  Gautt v. Lewis, 489 F.3d 993 (9th Cir. 2007); Chase v. Macauley, 971 F.3d 582 (6th Cir. 2020); and Simmons v. Inch, No. 3:20cv5461-MCR/EMT, 2021 WL 2905428 (N.D. Fla. Feb. 24, 2021), *adopted by order of district judge*, 2021 WL 2904921 (N.D. Fla. July 8, 2021).  ECF No. 1-2 at 7-9.  In particular, he argues:

Though slightly different from Petitioner's case, the foreground cases show Petitioner is entitled to relief. The holding in Gautt outlines how Petitioner was constitutionally entitled under Apprendi and Alleyne to a charging information which apprised him of sentencing enhancements. Gautt and Simmons both show that a charging information's failure to list the sentencing enhancement that a defendant will ultimately be subjected to is not cured by facts adduced at trial or a jury verdict. Thus, the state court finding that the discussion of DSFO cured the defect in the final information resulted in a decision that was contrary to or involved an unreasonable application of Apprendi and Alleyne. Chase shows that the petition alleging ineffective appellate counsel properly preserved Petitioner's claim and warrants relief. Regarding prejudice, Petitioner submits prejudice is easily shown because the 50-year minimum mandatory DSFO sentence on Count Two could not have been imposed absent the uncharged enhancement. Accordingly, the proper remedy is to remand for resentencing without the DSFO enhancement.

ECF No. 1-2 at 9-10.

Respondent asserts Goldson's reliance on these three cases is misplaced "because unlike the instant case, nothing in those decisions indicates that the defendants had actual knowledge of their exposure to an enhanced sentence prior to trial." ECF No. 8 at 25. Respondent's point is well-taken. *Cf.* Gautt, 489 F.3d at 998 (post-Apprendi/pre-Alleyne and explaining Gautt was charged with sentencing enhancement under one statute but had his sentence enhanced under different statute which was not charged); Chase, 971 F.3d at 586-87 (explaining sentencing judge used judge-found facts "based on offense variables that had not been found by

the jury, such as serving as a "leader," causing "[bodily injury requiring medical treatment," and causing "[s]erious psychological injury requiring professional treatment," as defined in Michigan statutes, to increase mandatory minimum sentence from 135 months to 270 months); Simmons, 2021 WL 2905428 at *4-*5, *11-*13 (finding Alleyne error because fact underlying 10-year mandatory minimum enhancement – that defendant actually possessed firearm during commission of burglary – was not charged in amended information or found by jury).

Indeed, the Ninth Circuit Court of Appeals has recently explained that its decision in Gautt, relied on here by Petitioner Goldson, "did not hold that the [Sixth Amendment notice] inquiry is limited to the information, let alone that clearly established federal law embodies such a limitation."  Handley v. Moore, 145 F.4th 1167, 1189 (9th Cir. 2025).  In Handley, the court affirmed the denial of § 2254 habeas relief to a petitioner who had alleged the denial of his Sixth Amendment right "to be informed of the nature and cause of the accusation" where "he lacked adequate notice of the special allegations" that subjected him to a sentence of life without parole "because they were omitted from the written information."  Id. at 1173.  The court summarized its decision:

> At the time of the California Court of Appeal's decision, it was not clearly established that the Sixth Amendment requires state charging documents to allege punishment-enhancing facts such as the special allegations at issue here.  Nor was it clearly

established that the notice required by the Sixth Amendment must be provided by the written information itself and that it cannot be provided through informal amendment of the information. The record accordingly does not support Handley's contention that the state court's decision was "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1). We also reject Handley's contention that the state court's factual findings regarding informal amendment of the information were objectively unreasonable under § 2254(d)(2). The state court reasonably found that Handley receive notice of and consented to the special allegations during the jury instruction conference. Finally, we reject Handley's contention that the state court decision was "contrary to" clearly established federal law because he was never expressly informed that the special allegations exposed him to a sentence of life without parole. Handley was informed of the special allegations, and section 209(a) itself states that the punishment triggered by a jury's true findings on those allegations is life without the possibility of parole. Hendley does not point to any Supreme Court decision requiring more explicit notice of the prescribed punishment.

*Id*. at 1173-74.

As did the petitioner in Hendley, Petitioner Goldson relies on the U.S. Supreme Court's decisions in Apprendi and Alleyne in support of his argument that the punishment enhancement had to be alleged in the information. In Hendley, the Ninth Circuit explained the holdings of those cases, particularly that neither establish that "the Sixth Amendment requires punishment-enhancing facts to be alleged in a state charging information":

In Apprendi, a New Jersey indictment charged the defendant with several state criminal offenses but made no mention of the state's hate crimes statute or the defendant's allegedly racially-motivated purpose in committing the crimes. 530 U.S. at 469 . . . . After the defendant pleaded guilty, the

state trial court applied the hate crimes statute, found by a preponderance of the evidence that the defendant acted with a racially-motivated purpose, and sentenced the defendant accordingly. *Id*. at 469-71 . . . . On review, the Supreme Court quoted [the statement in Jones v. United States, 526 U.S. 227 (1999),] that "'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt'" and stated that "[t]he Fourteenth Amendment commands the same answer in this case involving a state statute." *Id*. at 476 . . . (quoting Jones, 526 U.S. at 243 n.6 . . . ). The Court noted, however, that the petitioner "has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Id*. at 477 n.3 . . . . The Court ultimately held only that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490 . . . . **The holding made no reference to pleading requirements**.

. . . .

In Alleyne v. United States, 570 U.S. 99 . . . (2013), a federal indictment charged the defendant with using or carrying a firearm in relation to a crime of violence, in violation of 18 U.S. C. § 924(c)(1)(A). *Id*. at 103 . . . . Neither the indictment nor the verdict form mentioned § 924(c)(1)(A)(ii), which increases the statute's minimum sentence to seven years' imprisonment if the firearm is brandished, and the jury, which convicted the defendant, made no finding that the defendant brandished a weapon. *Id*. at 103-04 . . . . The district court, however, found that the defendant brandished a weapon and applied the seven-year statutory minimum. *Id*. at 104 . . . . Applying Apprendi and the Sixth Amendment right to jury trial, **the Court reversed, holding that "facts that increase mandatory minimum sentences must be submitted to the jury."** *Id*. at 116 . . . . In

reaching this conclusion, the Court cited the common law
principle that "if 'a statute prescribes a *particular punishment* to
be inflicted on those who commit it under special circumstances
which it mentions, or with particular aggravations,' then those
special circumstances must be specified in the indictment." *Id*.
at 112.

*Id*. at 1184-86 (bold emphasis added). The court concluded "there is no

Supreme Court decision looking back at the <u>Apprendi</u> line of cases and

characterizing them as clearly requiring state charging documents to allege

punishment-enhancing facts." *Id*. at 1187. The court further concluded that

"the <u>Apprendi</u>-era decisions upon which Handley relies do not clearly state

that the notice requirement of the Sixth Amendment requires state charging

documents to allege punishment-enhancing facts." *Id*. The court explained:

> <u>Apprendi</u> expressly declined to "address the indictment
> question." 530 U.S. at 477 n. 3 . . . . <u>Blakely [v. Washington</u>, 542
> U.S. 296 (2004)], <u>Southern Union [Co. v. United States</u>, 567 U.S.
> 343 (2012)], and <u>Alleyne</u> discussed common law principles
> requiring charging documents to allege each element of an
> offense, including punishment-enhancing facts, but none of
> those cases specifically stated that the Sixth Amendment notice
> requirement incorporates those common law principles.

*Id*. The court also concluded that "the federal circuits have not, to our

knowledge, widely applied [those cases] as setting forth a Sixth Amendment

standard requiring state charging documents to allege punishment-

enhancing facts." *Id*. at 1188. Accordingly, the court rejected "Handley's

contention that the <u>Apprendi</u> line of decisions clearly established that the

Sixth Amendment requires punishment-enhancing facts to be alleged in state charging documents." *Id*.

Similarly, in this case, Goldson's contention that he is constitutionally entitled under the <u>Apprendi</u> and <u>Alleyne</u> decisions to a charging information that apprised him of DSFO sentencing enhancements should be rejected. The First DCA's conclusion, in denying the petition alleging ineffective assistance of appellate counsel, that Goldson had actual notice of exposure to a 50-year mandatory minimum DSFO sentence did not contravene or involve an unreasonable application of those decisions. The jury specifically found that he "did cause serious personal injury to the victim," Ex. B1 at 135-36, and thus the state court properly imposed the DSFO sentence.

Based on the foregoing, Petitioner Goldson has not shown the state courts' rejection of this ground was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Thus, Goldson's claim of ineffective assistance of appellate counsel, denied by the First DCA, should also be denied here.

### <u>Ground 2(a)</u>:  Trial IAC – Failure to Investigate and Introduce Photos

In the second ground, Goldson asserts his trial counsel provided ineffective assistance by not investigating and not presenting at trial

evidence that would have supported the defense theory, specifically photos

the victim had sent Goldson.  ECF No. 1 at 7; ECF No. 1-2 at 11-15.  Goldson

raised this ground as the first claim in his amended Rule 3.850 motion.  *See*

Ex. E1 at 27-32.  The state post-conviction trial court set forth the claim:

> I.  In ground one, Defendant argues that his trial counsel
> was ineffective for failing to present certain photos he allegedly
> received from [the victim, T.R.].  [Ex. E1 at 28-29.]  Defendant
> alleges that his phone contained pictures of [the victim] and him
> dancing, pictures of [the victim] drunk, and a picture of [the victim]
> on his back in a pool.  [Ex. E1 at 28-29.]  Additionally, his Google
> drive contained numerous nude pictures of her.  [Ex. E1 at 28-
> 29.]  He acknowledges that while the Google drive pictures are
> headless, he notes that [the victim]'s tattoo of stars on her
> stomach is visible in all of them.  [Ex. E1 at 28.]  Defendant also
> notes that the picture properties all list a 2016 creation date,
> which would have been after the 2015 allegations of previous
> rapes.  [Ex. E1 at 28.]
>
> Defendant points out that this Court ruled that several
> photos were relevant to the nature of the relationship between
> Defendant and [the victim].  [Ex. E1 at 27-28, 30.]  He
> acknowledges that trial counsel did use some of the photos at
> trial.  [Ex. E1 at 30.]  However, he urges that counsel should have
> presented "all" of them.  [Ex. E1 at 30.]  In his view, the selfie
> nude photos of [the victim] do not constitute cumulative evidence
> because they differed in quality and substance from the ones
> presented at trial.  [Ex. E1 at 30-31.]  *See* <u>Valle v. State</u>, 502 So.
> 2d 1225, 1226 (Fla. 1987) (evidence not cumulative when
> "different in quality and substance" from other evidence).  He
> suggests that while [the victim] denied having a relationship with
> Defendant and sending him nude photos, the photo creation
> dates and the volume of nude pictures "would lead to the
> reasonable conclusion that [the victim] was not telling the truth."
> [Ex. E1 at 30.]

Defendant argues that trial counsel's failure to present the additional photos constituted a deficient performance, since the instant case was a "credibility contest" between [the victim] and him and they would have undermined [the victim]'s testimony. [Ex. E1 at 31.] He notes that during trial, [the victim] testified that she never flirted with him, never thought of him in a sexual way, and never sent him any nude pictures; she also conceded that she had stars tattooed on her stomach. [Ex. E1 at 18-19.] He further urges that the additional photos would have "added credence" to his testimony with respect to an "ongoing, clandestine sexual relationship with [the victim]." [Ex. E1 at 31.]

Defendant also argues that he suffered prejudice due to counsel's deficient performance since the additional photos were never presented to the jury. [Ex. E1 at 32.] He urges that if they had been presented, there is a reasonable probability that the jury would have disbelieved [the victim], believed him, and found him not guilty. [Ex. E1 at 32.]

The Court determines that Defendant is not entitled to relief on ground one. The Court finds that . . . he is unable to establish ineffective assistance of counsel as he fails to demonstrate either deficient conduct or prejudice as required under <u>Strickland v. Washington</u>.

Ex. E1 at 98-99. The court then made detailed findings in support of its

determination to deny relief, first finding no deficient performance:

*No deficient performance*. First, the Court finds that trial counsel's performance was not deficient under <u>Strickland</u> with respect to ground one. Before trial, counsel successfully argued to the Court that certain photos were relevant with respect to the nature of the relationship between [the victim] and Defendant. (T. 5-9.) [Ex. B5 at 5-8.] As indicated, during cross examination, counsel elicited testimony from [the victim] that one of the photos showed Defendant and her together at the beach. (T. 94). [Ex. B5 at 94.]

Even to assume for the sake of argument that the additional photos referenced by Defendant would not have been cumulative, as he urges, trial counsel was not deficient for seeking their admission.  As for the photos on Defendant's phone, the record reflects that they were not available to counsel or the State.  Corporal Rhinehart testified that he collected Defendant's phone and sent it to FDLE for testing, but FDLE was not able to access its contents.

As for the nude photos of [the victim] on Defendant's Google drive, Defendant himself acknowledges that while [the victim's]'s tattoo of stars on her stomach is visible in them, they were otherwise all headless.  [Ex. E1 at 28.]  Further, [the victim] in her testimony den[ied] ever sending Defendant nude photos of herself.  (T. 95).  [Ex. B5 at 95.]  While Defendant suggests that the jury could have chosen to disbelieve [the victim], in view of the number of nude photos involved, he overlooks that the jury just as likely could have chosen to disbelieve Defendant, since, as indicated, he admitted that he twice lied to law enforcement about the facts and circumstances of the instant criminal episode.  (T. 229-230).  [Ex. B5 at 229-30.]

Because of the issues with the nude photos, trial counsel arguably did better to focus on the photos that showed [the victim] and Defendant together, as part of her effort to show that [the victim] and Defendant had a clandestine relationship.  As indicated, counsel got [the victim] to acknowledge that one photo showed Defendant and her together at the beach, and that a second photo also showed Defendant and her together.  (T. 94).  [Ex. B5 at 94.]  As for the second photo, counsel also got [the victim] to acknowledge that she was wearing a bikini in it.  (T. 94).  [Ex. B5 at 94.]

In any case, photos aside, trial counsel was also successful in eliciting from [the victim] testimony that would potentially lend credence to Defendant's claim of a clandestine relationship.  On cross examination, counsel got [the victim] to admit that she would go to parties with Defendant where her sister was not present.  (T. 95).  [Ex. B5 at 95.]  Counsel also got [the victim] to acknowledge that she lived in the same residence

with Defendant on two occasions.  On the first occasion, she lived with Defendant, his mother, and her sister in Jamaica.  (T. 93).  [Ex. B5 at 93.]  On the second occasion, she stayed at Defendant's residence for several months when she first came to the United States.  (T. 95).  [Ex. B5 at 93.]  Counsel also got [the victim] to acknowledge that on the second occasion, she stayed at his residence even after he had raped her in Jamaica, and that Defendant slept directly above her in a bunk bed.  (T. 95-96).  [Ex. B5 at 95-96.]  In short, counsel's performance was not deficient.

Ex. E1 at 100-02.  The court then went on to find no prejudice, making

additional detailed findings:

> *No prejudice.*  Next, even to assume for the sake of argument that trial counsel's performance was somehow deficient, the Court finds that there was no possible prejudice for purposes of <u>Strickland</u> with respect to ground one.  The Court finds that any deficiency on the part of trial counsel with respect to the additional photos did not deprive Defendant of a fair trial, in view of the strong evidence of guilt adduced at trial.  While Defendant claims that the instant case was essentially a credibility contest between [the victim] and him, he overlooks that [the victim]'s testimony was corroborated by testimony from other witnesses and physical evidence.

> As indicated, according to [the victim]'s testimony, Defendant ran up to her, pulled her to a wooded area while squeezing her throat.  (T. 61-62).  [Ex. B5 at 61-62.]  She fought back and struggled to get away, pleading with him to let her go and not hurt her, but he pushed her to the ground and tied her hands behind her back.  (T. 63-65).  [Ex. B5 at 63-66.]  He maintained pressure on her throat.  (T. 64-65).  [Ex. B5 at 64-65.]  Defendant took off her shoes, pants, and underwear before raping her.  (T. 66-69).  [Ex. B5 at 66-69.]  She passed out.  (T. 70).  [Ex. B5 at 68, 70.]

> When [the victim] woke up, her hands were untied, and she was still wearing her red shirt.  (T. 70, 74).  [Ex. B5 at 70, 74.]

She was crying. (T. 71). [Ex. B5 at 71.] When she left the scene, she took only her purse, leaving her other articles of clothing behind. (T. 74). [Ex. B5 at 74.] She ran through the woods, flagged down a car, and received a ride home. (T. 71-72). [Ex. B5 at 71-72.] She used a yellow shirt that was inside her purse to cover the lower part of her body. (T. 74). [Ex. B5 at 74.] [She] attempted to converse with the driver, but he could not understand her. (T. 72). [Ex. B5 at 72.] When she arrived home, she was crying, and she told her roommates what had happened. (T. 72). [Ex. B5 at 72.] [She] went with law enforcement to the crime scene. (T. 77). [Ex. B5 at 77.] In open court, [the victim] recognized her belongings that law enforcement later recovered from the crime scene, including her shoes, pants, socks, and underwear. (T. 75-76). [Ex. B5 at 75-76.]

[The victim]'s testimony regarding a struggle between Defendant and her and Defendant tying her hands behind her back was corroborated by Jordan, the nurse who examined her after the criminal incident and took photographs of [the victim]'s injuries. (T. 191, 194). [Ex. B5 at 191, 194.] As indicated, Jordan saw grass in [the victim]'s hair and bruises on her face. (T. 191). [Ex. B5 at 191.] As also indicated, Jordan testified that the photographs depicted "multiple abrasions" on [the victim]'s neck, an abrasion across the back of her wrist, scratches and bruises on her arms, several abrasions on her left inner thigh, and scratches and abrasions on her face. (T. 196-198). [Ex. B5 at 196-98.] Jordan further testified that the injuries to [the victim]'s wrists appeared to be rope burns. (T. 200). [Ex. B5 at 200.]

[The victim]'s testimony that she flagged down a car was corroborated by Phelps, the man who gave her a ride home. (T. 117). [Ex. B5 at 117.] Consistent with [the victim]'s testimony, Phelps indicated that she was wearing only a red shirt and nothing else when he first saw her, and that he had trouble understanding her as [she] was crying "hysterically." (T. 117-118). [Ex. B5 at 117-18.] [The victim]'s roommate Salman similarly testified that [the victim] was crying hysterically, was only wearing a shirt and nothing else, with a sheet wrapped around her lower half, and had no shoes on. (T. 122). [Ex. B5 at 122.] [The victim] also had grass and leaves in her hair. (T.

122).  [Ex. B5 at 122.]

As a result of the Court's excited utterance ruling, Salman was allowed to give testimony about [the victim]'s statements about what happened to her.  (T. 34).  [Ex. B5 at 34.]  Notably, the substance of [the victim]'s excited utterance to Salman was consistent with her trial testimony.  According to Salman, [the victim] stated that Defendant grabbed her from behind, placed something over her mouth, and started pulling her.  (T. 123-124).  [Ex. B5 at 123-24.]  [The victim] also stated that she told Defendant to stop, but he "raped her."  (T. 124).  [Ex. B5 at 124.]

Similar to the testimony given by Phelps and Salman, Deputy Johnson, who responded to [the victim]'s residence, testified that [she] "had been crying," had grass in her hair, and had a towel "wrapped around her waist."  (T. 131).  [Ex. B5 at 131.]  Johnson also corroborated [the victim]'s testimony regarding the location of the criminal incident and the belongings she had left there.  According to Johnson, after [the victim] directed him to the scene, he found some articles of clothing, a Wal-Mart receipt, shoes, and undergarments.  (T. 132).  [Ex. B5 at 132.]

Finally, [the victim]'s testimony about the instant criminal episode was corroborated by her own Williams Rule testimony, in which she recounted three prior episodes involving Defendant.  As indicated, in all three episodes, Defendant grabbed her by the throat and [she] tried to get away from him.  (T. 81, 83-84, 89).  [Ex. B5 at 81, 83-83, 89.]  As also indicated, she was able to get away from Defendant in the first episode but was unable to do so in the second and third episodes, and then he raped her.  (T. 81, 84, 89).  [Ex. B5 at 81, 84, 89.]  Her Williams Rule testimony reinforced her testimony that the sexual activity in the instant episode, in which he also grabbed her by the throat, and tried to get away, was also not consensual.  (T. 61).  [Ex. B5 at 61.]

In short, [the victim] gave detailed testimony demonstrating that the sexual episode in the instant case was not consensual and the details of her testimony were corroborated by other witnesses and testimony as well as physical evidence.  To be

sure, Defendant claims that [the victim] and he were in a clandestine relationship, and that the additional photos would have corroborated that. However, whether or not they were in a clandestine relationship is ultimately not determinative of whether she gave her consent in the instant case. *Cf.* State v. Smith, 401 So. 2d 1126, 1129 (Fla. 5th DCA 1981) ("We hold that the fact of marriage carries with it no implied consent to sexual battery as defined under section 794.011, Florida Statutes. The statute proscribes a crime of violence, not a crime of sex."). Indeed, the evidence, as set forth above, is overwhelming that she did not.

Defendant also overlooks that he substantially undermined his own credibility with the jury. As indicated, Defendant in his testimony admitted that he twice lied to law enforcement, first claiming that he did not have sex with [the victim] at all, and then claiming that they had consensual sex on his living room couch. (T. 229-230). [Ex. B5 at 229-30.] Given his lack of credibility, the jury would have been fully entitled to discount his claim that [the victim] sent him the nude photos.

Accordingly, under the instant circumstances, the Court finds that there was no possible prejudice with respect to counsel's failure to seek admission of the additional photos. Therefore, the Court summarily denies relief on ground one.

Ex. E1 at 102-06 (footnote omitted).

As indicated above, Goldson appealed the denial of post-conviction relief to the First DCA, which per curiam affirmed the case without a written opinion. Ex. E5. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, 584 U.S. 122, 125 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the record references in brackets in the quoted portions of the state post-conviction trial court's order, above, support the court's findings regarding the photos that were admitted and defense counsel's cross-examination of the victim.  The record also supports the court's findings regarding the victim's testimony about the attack, the details of which were corroborated by other witnesses (Jordan, Phelps, Salman, and Johnson) and physical evidence, and Goldson's own testimony undermining his own credibility.  As that court explained, given all this, the jury could have reasonably discounted his claim that the victim sent him the photos at issue.

Further, in ruling on the motion in limine, the trial court allowed all but four (4) photos (1E, 1F, 1G, and 1H) and indicated those four headless photos may also be admissible "if you can lay the proper foundation for how

they were transmitted and whose body we're looking at, since it's not apparent." Ex. B5 at 8. The victim testified during the trial that Goldson took her phone during the attack and she "could hear tapping so [she] knew he was texting." Ex. B5 at 67. She testified she did not know "if he was still using my phone or his phone." *Id*. She further testified, "I saw, I'm not sure if he was taking pictures because I saw flashes, and it was dark so I knew he was using the phone to take pictures because I could see the flashes." *Id*. She "passed out after that." *Id*. at 68. When she woke up, she did not see Goldson in the area and she could not find her phone. *Id*. at 71. Given this, and that the victim lost her phone in the incident, it is at least arguably not clear how the photos at issue were transmitted and whether they could have been taken by Goldson during the crime.

Based on the foregoing, Petitioner Goldson has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### Ground 2(b): Trial IAC – Closing Argument

In the second ground alleging IAC of trial counsel, Goldson asserts his "counsel's closing argument omitted many notable and beneficial facts and

inferences adduced at trial."  ECF No. 1-2 at 15; *see* ECF No. 1 at 7.  Goldson

raised this ground as the second claim in his amended Rule 3.850 motion.

*See* Ex. E1 at 33-37.  The state post-conviction trial court set forth the claim:

> II.  In ground two, Defendant argues that his trial counsel
> was ineffective for failing to point out in closing argument the
> inconsistencies of the State's case and the "inherent
> unbelievability" of [the victim]'s testimony.  [Ex. E1 at 33-34.]
> While [the victim] stated that she realized she had urinated on
> her pants when he threw them over her face, he points out that
> the photograph of the pants showed no wetness.  [Ex. E1 at 35.]
> Similarly, he complains that counsel failed to note that the search
> of his room did not produce any black outfit, gloves, means to tie
> [the victim]'s hands, rag with chemicals, or phone belonging to
> [the victim].  [Ex. E1 at 35.]  He also complains that trial counsel
> also failed to note that no evidence was ever presented that [the
> victim]'s hands and arms bore any grass or dirt as would be
> expected.  [Ex. E1 at 35-36.]  Finally, he complains that counsel
> failed to take issue with [the victim]'s testimony that he "always"
> maintained a hand on her throat as he performed the sexual acts.
> [Ex. E1 at 35.]   In his view, "digital penetration, penile
> penetration, and using a phone, all while keeping a hand on [the
> victim]'s throat, is not a believable set of events during an alleged
> rape."  [Ex. E1 at 35.]
>
> Defendant argues that he suffered prejudice because of his
> trial counsel's alleged deficient performance with respect to the
> closing argument.  [Ex. E1 at 36-37.]  He claims that had counsel
> provided effective assistance, there is a reasonable probability
> that the jury would have disbelieved [the victim], believed the
> defense theory of the instant case, and found him not guilty.  [Ex.
> E1 at 36-37.]

Ex. E1 at 106-07.   The court then found no deficient performance, making

detailed findings:

*No deficient performance*.  First, the Court finds that trial counsel's performance was not deficient under Strickland with respect to ground two.  Rather, the Court finds that counsel made a cogent and professional closing argument to the jury, in which she, among other things, pointed to testimony that [the victim] and Defendant were in a consensual, clandestine relationship, pointed to inconsistencies in [the victim]'s testimony, took issue with [the victim]'s credibility and the plausibility of her testimony, and sought to offer a reasonable explanation for defendant twice changing his story to law enforcement.  [Ex. B5 at 266-69.]

Specifically, in arguing that [the victim] and Defendant were in a consensual, clandestine relationship, trial counsel noted that [the victim] lived with Defendant in Jamaica and the United States and worked with him after the alleged rape incidents.  (T. 266-267).  [Ex. B5 at 266-67.]  Additionally, [the victim] socialized with him both here and in Jamaica before and after these alleged assaults took place.  (T. 267).  [Ex. B5 at 267.]  Counsel asked rhetorically, "Why does she keep coming back to the States and living near him or around him and working with him or around him if he had been raping her all these times?" (T. 269).  [Ex. B5 at 269.]  Counsel argued,

> [Defendant] told you that they had a consensual relationship behind his girlfriend's back.  That makes sense.  It makes sense for many reasons.  If they were having consensual sex, then it wouldn't be scary for her to come and live with [him] here, it wouldn't be scary for her to come and work with [him] here.  If they were having consensual sex so there was nothing to be scared about.

(T. 268).  [Ex. B5 at 268.]  In this connection, counsel also explained why the relationship was clandestine, while at the same time suggesting a motive for [the victim] not telling the truth:  "[Defendant] had consensual sex with her and she doesn't want to admit it.  Her sister is here, she doesn't want to admit it in front of her sister."  (T. 269).  [Ex. B5 at 269.]

Trial counsel pointed out that [the victim]'s testimony was inconsistent with the physical evidence. [Ex. B5 at 267.] Counsel asked rhetorically about the rag that Defendant held over her face and what he used to tie her hands: "And where is the rag that he held over her face and where is whatever he used to tie her hands? If he left everything else there, which they came and found everything else, right, where are those things?" (T. 267). [Ex. B5 at 267.]

Trial counsel took issue with [the victim]'s credibility and the plausibility of her testimony. [Ex. B5 at 267-68.] Counsel challenged [the victim's] credibility as follows:

> [I]f you noticed when [the victim] talked to [the prosecutor] she was very tearful, very upset, but as soon as I started talking to her she got pretty angry and pretty defensive, didn't she? She didn't want to answer my questions, the judge had to tell her to answer my questions because she didn't want to answer them, because she knows that she's not telling the truth. That's the problem here, she knows that everything that we're telling but her relationship with him there and here doesn't make any sense. And she knows that every time she had to answer a question yes, when I asked her if she had been with him in Jamaica and she had been with him she had to say yes, and she didn't want to do that because it doesn't go with her story.

(T. 268). [Ex. B5 at 267-68.] Counsel pointed out that [the victim]'s testimony about the criminal episode was implausible as follows:

> [H]ow would [Defendant] know that [the victim] was walking down the path at that particular time? She admitted that he didn't know her schedule at Hammerhead Fred's, so how did he know she was going to be there? It doesn't make any sense. He's going to dress all in black, get something ready to put over her nose, get something ready to tie her hands

> with, but he didn't know she was going to be there?
> So does it make any sense at all?  It doesn't.

(T. 267-268).  [Ex. B5 at 267-68.]

Finally, trial counsel sought to offer a reasonable explanation for Defendant changing his story as follows:

> He told you that he lied because he didn't want to get in trouble, and that's the truth, he didn't want to get in trouble here.  Things must be different in Jamaica, he thought if he said anything at all, first, about having sex, he was gonna go get locked up.  Then he thought that here you would get [in] trouble if you did something outside, so he didn't want to tell that, either.  Was he smart about that?  No.  Does that make him a rapist?  No.

(T. 269).  [Ex. B5 at 269.]

To be sure, trial counsel did not point to every inconsistency in [the victim]'s testimony or to every implausible aspect of it.  As Defendant argues, counsel did not specifically point to the alleged inconsistency about [the victim] urinating on her pants, or the lack of grass or dirt on her hands.  [Ex. E1 at 35-36.]  And while counsel did not specifically point to the lack of corroborating evidence of a black outfit, gloves, or phone belonging to [the victim], as noted counsel did point to the absence of other such evidence, namely the absence of the rag that Defendant held over her face and what he used to tie her hands. (T. 267).  [Ex. B5 at 269.]  Counsel also did not take issue with [the victim] testifying that Defendant "always" maintained a hand on her throat as he performed the sexual acts against her.  [Ex. E1 at 35.]  However, [the victim]'s testimony could be fairly construed simply to mean that according to her, Defendant continually kept his hand over her throat.  Counsel otherwise did well not to quibble with [the victim]'s choice of words, as doing so could have well backfired.  In any case, as indicated, counsel did point to other implausible aspects of her testimony, namely her testimony that Defendant was lying in wait for her when he

admittedly did not know her work schedule that night.  (T. 267-268).  [Ex. B5 at 267-68.]

In short, trial counsel's performance was not deficient under Strickland with respect to her closing argument.

Ex. E1 at 107-10 (footnote omitted regarding "alleged inconsistency about [the victim] urinating on her pants, or the lack of grass on or dirt on her hands," stating:  "However, whether [the victim] urinated on her pants was not a critical portion of her testimony, and the mere absence [of] grass or dirt on her hands would not necessarily indicate that she was not on the ground with her hands behind her back.").

The court went on to find no prejudice, given the overwhelming evidence of guilt previously discussed:

> *No prejudice*.   Next, even to assume for the sake of argument that trial counsel's performance was somehow deficient, the Court finds that there was no possible prejudice for purposes of Strickland with respect to ground two, in light of the evidence and testimony set forth above in the discussion of lack of prejudice for ground one, which reflects that the evidence was "overwhelming" that she did [not] consent.  Therefore, the Court summarily denies relief on ground two.

Ex. E1 at 111.  As indicated above, Goldson appealed the denial of post-conviction relief to the First DCA, which per curiam affirmed the case without a written opinion.  Ex. E5.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at

1254-55.  A review of the record supports the state courts' determination. *See* Wilson, 584 U.S. at 125.

In particular, the record references in brackets in the quoted portions of the order, above, support the state post-conviction trial court's findings regarding the points made by defense counsel in the closing argument.  As that court explained, defense counsel challenged the victim's testimony using particular examples and also attempted to explain why Goldson lied and changed his story.  The court also pointed out that whether the victim urinated on her pants (which may not have been visible in a photograph at any rate) was not a critical part of her testimony and the absence of grass or dirt on her hands does not necessarily indicate she was not on the ground.  As the court indicated, defense counsel perhaps strategically chose not to challenge the victim's testimony that Goldson "always" maintained a hand on her throat as that may have been how the victim perceived it and taking issue with the victim's word choice may have backfired.

Based on the foregoing, Petitioner Goldson has not shown the state courts' rejection of this ground was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## Conclusion

The § 2254 petition is timely, but Petitioner Goldson is not entitled to federal habeas relief.  Therefore, it is respectfully recommended that the petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.  The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 15, 2025.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**